**FILED**

NOV - 2 2007
NOV 2 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM P. ANDERSON, On Behalf of     :
Himself and all others similarly situated     :
    :
      Plaintiff,            **07CV6213**

v.                      **JUDGE BUCKLO**

SATURN CORPORATION        **MAG. JUDGE COLE**

      Defendant.

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1441 and §1446, Defendant Saturn Corporation ("Saturn" or

"Defendant"), files this Notice of Removal of this action from the Circuit Court of the Nineteenth

Judicial District, Lake County, Illinois. As grounds for removal, Defendant states the following:

### BASIS FOR REMOVAL

1.     On September 27, 2007, Plaintiff William P. Anderson ("Plaintiff"), commenced this

putative class action by the filing of a Complaint under the caption of <u>William P. Anderson v. Saturn</u>

<u>Corporation</u>, in the Circuit Court of the Nineteenth Judicial District, Lake County, Illinois, bearing

Docket No. 07-CH-2544 (the "State Court Suit").

2.     Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings, and orders received

by Defendant in the State Court Suit are attached hereto as <u>Exhibit A</u>.

3.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), in that it has been

filed by Defendant within thirty (30) days after the receipt by Defendant on October 4, 2007, through

service of a copy of the initial pleading setting forth the claims for relief upon which Plaintiff's

action is based.

4.    Plaintiff's action is a civil action that falls under this Court's original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332. Removal is proper pursuant to the provisions of 28 U.S.C. § 1441.

## BASIS FOR FEDERAL DIVERSITY JURISDICTION

5.    This case is removable under 28 U.S.C. § 1441 because the United States District Court has original jurisdiction over this case under 28 U.S.C. § 1332 (d)(2). Section 1332 (d)(2) provides, in pertinent part:

> (d)(2) The district court shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>
> …

28 U.S.C. § 1332 (d)(2)

## DIVERSITY OF CITIZENSHIP

6.    At the time of filing of the Complaint and this Notice of Removal, Plaintiff was and is a citizen of Illinois since he is an individual residing in Lake County, Illinois.  Complaint at ¶ 12.

7.    At the time of the filing of the Complaint and this Notice of Removal, Saturn is and was a citizen of Delaware and Michigan since it is a Delaware corporation with its principal place of business in the State of Michigan.  Complaint at ¶ 14.

8.    Accordingly, the diversity of citizenship requirement is satisfied in this action. *See* U.S.C. § 1332(d)(2)(A).

## AMOUNT IN CONTROVERSY

9.      In the Complaint, Plaintiff seeks to represent a class consisting of "all persons or entities in Illinois who purchased, not for resale, the Vehicles from Defendant or any authorized resellers." Complaint at ¶ 35. The Complaint defines "Vehicles" as 2000-2003 Saturn L-Series with 2.2L Engine, 2002-2003 Saturn Vue with 2.2L Engine, and 2003 Saturn Ion. Complaint at ¶ 2.

10.     Plaintiff asserts on behalf of the class that the vehicles are defective because they contain a metal timing chain which allegedly will not last for the life of the vehicle. Complaint at ¶¶ 3-7. Plaintiff alleges that the class has been damaged because they "reasonably expected that the Vehicles would not contain a known defect with the potential of costing them thousands of dollars to repair"." Complaint at ¶ 10.

11.     Based on these factual allegations, Plaintiff asserts claims on behalf of the class for (1) breach of express and implied warranty, and (2) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Complaint at ¶¶ 53-78.

12.     Plaintiff seeks compensatory damages, statutory and punitive damages, "disgorgement of profits and other equitable relief, including replacement of the timing chains and associated oiling mechanisms in the affected Vehicles," injunctive relief, together with interest, costs, and attorneys' fees for the class. Complaint at ¶ 12. Plaintiff asserts that repairs associated with timing chain failure are "$2,000 to $3,000 per repair, or more." Complaint at ¶ 7.

13.     The class as defined by Plaintiffs would number approximately 20,000, as there were 19,650 vehicles included in the class definition sold in Illinois.

14.     "In a class action in which CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy." *Kitson v. Bank of Edwardsville*, 240 F.R.D. 610 (S.D. Ill.

-3-

2006). A removing defendant is "not required to establish with overwhelming evidence the precise amount in controversy" but rather need only show by a preponderance of the evidence that the amount likely exceeds $5 million. *Espinosa v. Phillips Morris USA, Inc.*, 2007 U.S. Dist. LEXIS 21135 (N.D. Ill. 2007). Of course, the allegations of the class complaint can be used to ascertain the amount in controversy. *Id.; see also Fiore v. First American Title Ins. Co.*, 2005 U.S. Dist. LEXIS 34348 (S.D. Ill. 2005).

      15.    Plaintiff seeks on behalf of the class, among other things, to have Defendant replace "the timing chains and associated oiling mechanisms in the affected vehicles." Complaint at ¶ 12. Plaintiff further alleges that repairs can cost in the thousands of dollars, Complaint at ¶ 7, and that repair of her vehicle cost "approximately $3,700." Even assuming each class member is seeking only $300, the amount in controversy clearly exceeds the $5 million threshold. Specifically 19,650 Vehicles were sold in Illinois, so $300 each would equal $5,895,000. The evidence and Plaintiff's own allegations satisfies Defendants burden to demonstrate that the amount in controversy has been met. *See Kitson*, 240 F.R.D. 610 (evidence of size of class coupled with potential recovery on claims asserted established that CAFA's jurisdictional prerequisites were satisfied.) In this regard, 28 U.S. C. § 1332(d)(6) provides: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs."

## REMOVAL TO THIS JURISDICTION IS PROPER

      16.    Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, removal of this action to this Court is appropriate.

      17.    The removal of this action to this Court is proper under 28 U.S.C. § 1441(a) since this Court sits in the judicial district and division embracing the county where the state action is pending.

18.   Defendant respectfully requests that this court assume jurisdiction over this matter and issue such orders and processes as may be necessary to bring before it all the parties necessary for the trial hereto.

19.   A true and correct copy of this Notice has been filed with the State Court, as required by 28 U.S.C. § 1446. Written notice of the filing of this Notice of Removal, and the removal of the above-referenced action, is being delivered to Plaintiff's counsel.

WHEREFORE, Defendant gives notice that this action now pending in the Circuit Court of the Nineteenth Judicial District, Lake County, Illinois, is hereby removed to this Honorable Court for trial and determination of all issues.

**DATED:**   **November 2, 2007.**

Respectfully submitted,
**CHITTENDEN, MURDAY & NOVOTNY LLC**

By: _____

One of the Attorneys for Defendant
**SATURN CORPORATION**

William A. Chittenden, III
Matthew W. Gasaway
CHITTENDEN, MURDAY & NOVOTNY LLC
303 W. Madison Street, Suite 1400
Chicago, IL 60606
(312) 281-3600
O:\GE101\41058 Anderson\Pleadings\Removal\removal-not-fed.doc

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM P. ANDERSON, On Behalf of     :
Himself and all others similarly situated    :
                                                :
            Plaintiff,              :
                                     : CASE NO:
v.                                    :
                                     :
SATURN CORPORATION         :
                                     :
            Defendant.

## DECLARATION OF MICHAEL TOMASEK

1.     My name is Michael Tomasek. I am over the age of twenty-one years, am of sound mind, and I am otherwise competent to make this Declaration. I am an employee of General Motors Corporation ("GM"). My title is Manager of US and Global Reporting and Internal User Systems. Saturn Corporation is a subsidiary of GM. I have reviewed the putative class definition in the Complaint filed in the above-referenced action, and I have personal knowledge of all of the facts stated herein, all of which are true and correct.

2.     I understand the plaintiffs are asking for a class consisting of "[a]ll persons or entities in Illinois who purchased, not for resale, the Vehicles from [Saturn] or any authorized resellers." Plaintiffs define Vehicles as "model-years 2000-2003 Saturn L-Series with 2.2L Engine (VIN F-RPO L61), 2002-2003 Saturn VUE with 2.2L Engine (VIN D-RPO L61), and 2003 Saturn ION [v]ehicles..." There were a total of 19,650 Saturns within the plaintiffs' definition of Vehicles sold in Illinois. This number only

includes vehicles sold in Illinois through (1) direct sales by Saturn, (2) fleet sales, and (3) retail sales by authorized Saturn dealers.

    3.    I declare, under penalty of perjury, that the above is within my personal knowledge and true and correct.

This __1ˢᵗ__ day of November, 2007.

_Michael Tomasek_

Michael Tomasek

# SUMMONS

---

### IN THE NAME OF THE PEOPLE IN THE STATE OF ILLINOIS, IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

William P. Anderson, On Behalf of
Himself And All Others Similarly
Situated,

            Plaintiff(s)

vs.

Saturn Corporation

            Defendant(s)

**07 CH 2544**

No.

Please Serve:
Saturn Corporation
Registered Agent C T Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

To each of the above-named defendants:

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in this complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

         SEAL
         OF
         COURT

WITNESS SALLY D. COFFELT, Clerk of said Circuit Court, and the seal thereof at Waukegan, Illinois, this _____ day of
SEP 2 7 2007    A.D., 20____

*Sally D. Coffelt*
SALLY D. COFFELT, Clerk

Plaintiff's Attorney:
(or plaintiff, if he be not represented by attorney) Richard N. Kessler  6183140
McDonald Hopkins LLC,
Address 640 N. LaSalle, Ste.590, Chgo, IL
Telephone 312-280-0111

Date of Service: _____, 20 _____
(To be inserted by officer on copy left with defendant or other person.)

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL DISTRICT, LAKE COUNTY, ILLINOIS

WILLIAM P. ANDERSON, On Behalf Of    :
Himself And All Others Similarly Situated,

               Plaintiff,    :    CASE NO.    **07 CH 2544**

        v.    :    CLASS ACTION COMPLAINT

SATURN CORPORATION,    :    JURY TRIAL DEMANDED

           Defendant.

      Plaintiff, William P. Anderson (hereinafter "Plaintiff" or "Anderson"), by and through his

undersigned counsel, on behalf of himself and all other persons and entities similarly situated,

alleges the following facts and claims upon knowledge as to matters relating to himself and upon

information and belief as to all other matters and, by way of this Complaint, avers as follows:

## INTRODUCTION AND SUMMARY OF ACTION

      1.     Plaintiff brings this class action on behalf of himself and all others similarly

situated against Defendant, Saturn Corporation ("Defendant" or "Saturn"), to obtain, *inter alia*,

damages and injunctive relief for the proposed class ("Class"), as defined below.

      2.     As alleged and explained more fully below, Saturn has misrepresented and

concealed material information in the marketing, advertising, sale, warranting and servicing of

certain of its vehicles, including model years 2000-2003 Saturn L-Series with 2.2L Engine (VIN

F - RPO L61), 2002-2003 Saturn VUE with 2.2L Engine (VIN D - RPO L61) and 2003 Saturn

ION Vehicles (hereinafter "Vehicles"), which were all built with the same L-61 engine. The L-

61 engines contained a metal timing chain (as opposed to a synthetic timing belt), which was

intended to last for the life of the engines. While some Saturn dealers recommend that synthetic

timing belts in certain other models be replaced after approximately 75,000 miles, the metal

{1297506:}

10/04/2007  15:10    3123454343                    SOP                          PAGE  04/19

timing chains at issue in this case are not supposed to require any replacement during the life of the Vehicles.

3.    Saturn misrepresented and concealed material facts concerning a serious design defect that causes the metal timing chains in the L-61 engines to break suddenly. As was known to Saturn, at all pertinent times, when the timing chains break, the L-61 engines shut down and stop operating abruptly, including, in some cases, while the Vehicles are being driven at highway speeds. When these engines shut down abruptly, it is difficult for drivers to control the Vehicles or steer them out of traffic, putting the drivers and others on the road at risk of serious bodily injury. In addition, because the Vehicles can no longer be driven once the timing chain breaks, they ordinarily need to be towed to the nearest automotive repair facility, at the owner's expense.

4.    Saturn knew and was aware, before marketing and selling the Vehicles, that they were manufactured using engines and timing chain mechanisms that were inherently defective, and that the timing chains were substantially likely to fail and break during ordinary use, long before they reached the end of their normal useful life. Saturn also knew and was aware that, when the timing chains failed, the result frequently would be extensive damage to the engine, such that the entire engine would need to be replaced in many cases. Nevertheless, Saturn failed and refused to warn its customers of the serious defect inherent in all of their Vehicles or to warn them about the extensive engine damage and repair costs that would need to be incurred when the timing chains break.

5.    Saturn began investigating reported failures of timing chains in subject Vehicles by no later than August 2001, according to written materials that it filed with the National Highway Traffic Safety Administration ("NHTSA"). By that date, Saturn was aware that there was a significant defect in the Vehicles, which needed to be addressed. Based on its

{1297506;}

10/04/2007  15:10    3123454343            SDP                    PAGE  05/19

investigation, Saturn determined that the timing chain failures were caused by an insufficient supply of oil to the timing chain mechanism because of a defective timing chain oiling nozzle. Saturn also determined that, when a timing chain is not lubricated with sufficient oil from the oiling nozzle, it suffers severe wear and damage.

6.      After discovering the problems with its timing chain mechanisms, including the oiling nozzles, Saturn developed Technical Service Bulletin ("TSB") No. 03-06-01-017, which was released on or about June 9, 2003.  Pursuant to this TSB, Saturn advised its dealers and other automotive service personnel that it had made design changes to both the timing chain and oiling nozzle, and that the newly-designed parts were available for installation on the Vehicles. Rather than notifying Saturn customers of the TSB or the defective timing chain and oiling nozzle, however, Saturn routinely and misleadingly attempted (and continues to routinely attempt) to persuade consumers that they (not Saturn) are responsible for the failure of the timing chains because they allegedly did not change the oil with sufficient frequency, all the while knowing that the real problem rests with the original timing chains and oiling nozzles that Saturn installed in the Vehicles.

7.      Despite learning of the timing chain and oil nozzle defects in approximately August 2001, Saturn has refused, and continues to refuse, to warn consumers about the defect inherent in the Vehicles, all of which have the same L-61 engines.  Unwilling to admit fault, Saturn has sat silently, while thousands of consumers have purchased defective Vehicles, and it continues to sit silently despite knowing that an unacceptable percentage of the timing chains in the Vehicles have failed, resulting in expensive engine repairs, often in the sum of $2,000 to $3,000 per repair, or more.

10/04/2007   15:10    3123454343                    SOP                        PAGE   06/19

8.     As a result of the design defect that plagues the Vehicles, Plaintiff and other members of the Class have sustained monetary losses and overpaid for the Vehicles because the value of the Vehicles was diminished at the time they were sold to consumers.  In light of Saturn's knowledge of the problems associated with the timing chain and oiling mechanism defects, Saturn knew or should have known that it was selling Vehicles to consumers that had a value substantially less than the amount those consumers paid for the Vehicles, without knowing of the defect.  Had Plaintiff and members of the Class known of the defect, they would not have purchased the Vehicles, or would have paid substantially less for the Vehicles.

9.     Saturn also has profited, either directly or indirectly, by concealing the nature of the defect because, by misrepresenting its knowledge regarding the defect at issue and misrepresenting the cause of the problems to consumers, Saturn has been able to convince a large number of consumers to pay for replacement timing chain mechanisms, oil nozzles, engines and/or other related parts (from which Saturn earns a profit) to address the problems arising from a design defect for which Saturn (and not the consumers) are responsible.

10.     As a result of Saturn's false and misleading statements and acts of concealment, as well as Saturn's other misconduct described herein, Plaintiff and the Class purchased many thousands of the Vehicles and have suffered -- and continue to suffer -- injury as a result of the defective nature of the Vehicles and because of Defendant's misconduct.  Plaintiff and members of the Class reasonably expected that the Vehicles would not contain a known defect with the potential of costing them thousands of dollars to repair.

11.     Plaintiff asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDPA"), 815 ILCS 505/1 *et. seq.*, as well as certain common law claims.

{1297506:}

-4-

10/04/2007  15:10    3123454343                    SOP                          PAGE  07/19

12.     Plaintiff seeks actual and/or compensatory damages, as well as recoverable statutory and punitive damages, restitution, disgorgement of profits and other equitable relief, including replacement of the timing chains and associated oiling mechanisms in the affected Vehicles, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available.

## PARTIES

13.     Plaintiff resides and has resided, at all relevant times, in Waukegan, Lake County, Illinois.  Plaintiff purchased a new 2002 Saturn L200 on October 12, 2001, and took delivery of the vehicle shortly thereafter.  Plaintiff paid approximately $19,500 (including tax) for his Saturn vehicle and, at all relevant times, has used that vehicle for its intended purpose.  Like all other Class members, Plaintiff received a vehicle from Saturn that was defective because it included an L-61 engine, which (as Saturn knew at the time of the sale) has had, at all relevant times, a defective timing chain and oiling mechanism.  As a result of these defects, Plaintiff's vehicle has failed to perform in an acceptable manner or in the manner that it was warranted and intended to perform, and Plaintiff has suffered harm and been damaged.

14.     Saturn is a corporation organized under the laws of Delaware and maintains its principal place of business in Detroit, Michigan.  Saturn markets and sells the Vehicles at issue in this litigation throughout the United States, including Illinois.  Saturn does substantial business in Illinois and is authorized to transact business in this State.  Saturn's registered agent for purposes of service of process in Illinois is CT Corporation System, 208 S. LaSalle Street, Chicago, Illinois.

10/04/2007  15:10    3123454343                    SDP                        PAGE  08/19

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action, and personal jurisdiction over the Defendant.  Plaintiff resides in Illinois, Saturn does a substantial business in Illinois, and Plaintiff's vehicle was purchased from a Saturn authorized dealer in Illinois.

16.    Venue is proper before this Court because Plaintiff is a resident of Lake County, he purchased the subject vehicle in Lake County, and that vehicle is currently located in Lake County.  In addition, numerous members of the proposed Class reside in Lake County, and witnesses having pertinent knowledge are located in Lake County.

17.    At all pertinent times, Defendant was engaged in the sale of products, including the Vehicles, within the State of Illinois.

18.    At all pertinent times, Saturn was in the business of distributing, advertising, marketing, promoting and selling products in Illinois, including the Vehicles.

19.    The Vehicles that form the basis of this Complaint were purchased from Defendant and/or placed into the stream of commerce by Defendant, knowing that those Vehicles would be sold in Illinois, among other states.

## FACTUAL BACKGROUND

20.    Plaintiff purchased one of the Vehicles on October 12, 2001, and received delivery of that vehicle shortly thereafter.   Plaintiff was told, at the time he purchased his vehicle, that it had a metal timing chain, which (unlike a timing belt) never needed to be replaced.

21.    On June 17, 2007, Plaintiff was driving in traffic on Route 294 west of Chicago, Illinois, near O'Hare Airport, when his vehicle's engine suddenly stopped running properly, which required Plaintiff to move his vehicle out of traffic immediately.  Fortunately, neither

{1297506:}

Plaintiff nor any other drivers in his vicinity were injured as the result of the sudden failure of the vehicle's engine or the evasive action that Plaintiff needed to take to get the vehicle out of traffic.

22.    Once Plaintiff stopped his vehicle, he could not restart it and needed to have it towed to a local automotive repair shop. In the days that followed, automotive mechanics told Plaintiff that, although they could not inspect the timing chain without disassembling the engine, based on testing they performed showing that a number of engine valves were still open, it was likely that the timing chain in his vehicle had broken. Plaintiff was also told that, in the experience of the mechanics he consulted, a broken timing chain was a common problem with certain Saturn vehicles, and that given the nature of the engine (an interference engine), it was very likely that when the timing chain broke, it caused extensive damage to the engine, which would probably require the engine to be replaced or repaired at a cost in excess of $2,000 to $3,000. Subsequently, upon disassembly of the engine, it was confirmed that the timing chain, indeed, had broken. The Plaintiff paid approximately $3,700 to repair the damage to his vehicle (not including towing and loss of use of the vehicle while it was being repaired).

23.    When he learned of the timing chain and oiling mechanism defect, and again after he learned the approximate cost to repair the engine damage caused by the broken timing chain, Plaintiff contacted Saturn to request that it pay for the repair, but Saturn would not do so. Before his vehicle's timing chain broke, Plaintiff had never before been told, nor had otherwise known, that there were problems with the timing chains or associated components in the Vehicles at issue. When Plaintiff was initially told of the problem by the mechanics that inspected his vehicle, he performed internet research on Saturn timing chains and found that there had been hundreds (if not thousands) of complaints involving these Vehicles, many of which involved experiences similar to his. At the time Plaintiff's timing chain broke, his vehicle had

{1297506:}

-7-

approximately 65,000 miles, which was less than the recommended mileage (75,000 miles) for

changing even a synthetic timing belt (much less a metal timing chain). As Plaintiff had been

told, when he purchased his vehicle, the timing chain was intended to last the life of the engine,

and it certainly failed far before the expiration of its expected useful life.

24.    Plaintiff's experience mirrors those of thousands of other owners of the Vehicles.

The internet is replete with references to the common and profound problems that consumers

have experienced with the Vehicles, including, timing chain failures in Vehicles that had even

less mileage than Plaintiff's vehicle when the timing chain broke.  For instance, some consumers

have reported on various websites or electronic bulletin boards that the timing chains in their

Vehicles broke and their engines were seriously damaged even though their Vehicles, in some

cases, had fewer than 50,000 miles.  The following is merely a small representative sample of

complaints appearing in just one on-line forum:

**Carl of Staten Island NY (02/08/07)**
My 2001 Saturn L200 with only 40,000 miles died while driving to
work.  After being towed to repair shop, mech. told me timing
chain went and to contact Saturn dealer because this is a design
flaw with 4 cyl. 2.2L engines.  Still waiting to get call back from
dealer.

**Beryl of Dracut MA (04/25/07)**
I purchased a Saturn 2002 L series back in 2004, a year later while
I was driving the car the time chain broke without any warning, I
had it towed to my mechanic and had to have the engine rebuilt
because he said the pistons were also gone. It cost me $2000. I
tried over and over again to get the dealership to cooperate but they
kept blowing me off. My mechanic said Saturn's are notorious for
blowing timing chains.

**Steve of Denver CO (07/16/07)**
I'll keep this short because I 'm still so angry. I have a 2002 Saturn
SL2. I was driving on the Highway when I lost power and the
engine rattled. I was told that it was a maintenance problem
because the Oil was black. Are you kidding me, I only had 70,000
miles on it. I'm paying 3,500 to replace the Engine.

{1297506;}

-8-

10/04/2007   15:10    3123454343              SOP                    PAGE  11/19

**Jason of Deforest WI (07/31/07)**
As many others have reported, I had the timing chain on my 2002
Saturn L100 break when I was on the highway with my 2 children.
I lost all power to the vehicle but was luckily able to get to the side
of the road safely. This appears to be a serious problem that needs
to be addressed.

www.consumeraffairs.com.

25.    Saturn represented and warranted to Plaintiff and other Class members that the

Vehicles were reliable, that they were free from material defects, and that they were of

merchantable quality and workmanship.   Plaintiff's experience, like those of other purchasers of

Vehicles who have publicly recounted their problems, reveals that Saturn's representations and

warranties were false and misleading.  In reality, all the while Saturn was making these

representations and warranties, it knew that the Vehicles were defective and did not perform

properly, and that the timing chains were prone to breaking, which ordinarily resulted in

substantial expense associated with the repair or replacement of the Vehicles' engines.

26.    Saturn knowingly concealed material facts regarding the Vehicles, including that

they are inherently defective and unreliable, and that they are not of merchantable quality, with

the intent of deceiving consumers who purchased the Vehicles, who would not have made the

purchase had Saturn not concealed the truth.

27.    Although faced with hundreds or thousands of complaints concerning the defects

in the L-61 engines, including the defects to the timing chain and oiling mechanism, Saturn has

failed and refused to warn consumers about the defects inherent in these Vehicles and, instead,

has sat silent while consumers purchased these defective products.

28.    Plaintiff's experience is far from innocuous or isolated, as there have been

hundreds or thousands of owners of the Vehicles who have complained to Saturn and on internet

{1297506:}

10/04/2007  15:10   3123454343                    SDP                        PAGE  12/19

web sites about the uniform failures of their timing chains, and the substantial engine damage

that ordinarily results.  Yet, even after receiving an extraordinary number of complaints, Saturn

has failed and refused to disclose or warn users of the defects in the Vehicles' engines.  Although

Saturn was aware of the defects inherent in the L-61 engines early in the life cycle of these

Vehicles (*i.e.* before marketing and selling many of them), Saturn never sought to warn either its

current or prospective customers of these problems.

29.     In the end, the harm caused by Defendant's false and misleading affirmative

statements and omissions grossly outweighs any benefit that might be attributed to them.

30.     The Vehicles purchased by Plaintiff and Class members failed to work due to a

defect in design (not because of any extraordinary or unusual usage of the Vehicles by Plaintiff or

Class members).

31.     Saturn failed to adequately design and test the Vehicles, their engines and the

timing chain mechanisms to ensure that they were free from defects.  Before these Vehicles

reached the market, Saturn either knew or was reckless in not knowing that they: (a) contained

inherent defects; and (b) were not of merchantable quality.

32.     To this day, Defendant continues to conceal material information from users,

consumers, and the public, through its customer service representatives, that: (a) the Vehicles and

their engines are inherently defective; and (b) the Vehicles and their engines are not of

merchantable quality.

33.     All jurisdictional prerequisites have been and/or are hereby satisfied by and

through the filing and service of this Complaint.

{1297506;}

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on his own behalf and on behalf of all other persons

similarly situated, pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure.

35.     The Class that Plaintiff seeks to represent in this matter is defined as follows:

> All persons or entities in Illinois who purchased, not
> for resale, the Vehicles from Defendant or any
> authorized resellers.

Excluded from the Class are Defendant, its affiliates, employees, officers and directors, as well as

persons or entities that distribute or sell the Vehicles and the judge(s) assigned to this case.  Any

claims that Plaintiff or any Class members may have for personal injuries or damages arising

from or related to personal injuries are expressly excluded from this action.  Plaintiff reserves the

right to amend this Class definition if discovery and further investigation reveals that the Class

should be expanded or otherwise modified.

36.     **Numerosity**:  The members of the proposed Class are so numerous that joinder of

all members is impracticable.  The proposed Class includes thousands of members.  The precise

number of Class members only can be ascertained through discovery, which will include

Defendant's sales, warranty service and other records.

37.     **Commonality**:  The following questions of law and fact are common to the Class:

    (a)     whether the Vehicles are defective;

    (b)     whether, prior to sale, Saturn knew that the Vehicles were defective;

    (c)     whether Saturn breached warranties running between it and the members
    of the Class;

    (d)     whether the limits Saturn attempts to impose and/or has imposed on its
    warranties concerning the Vehicles are unconscionable and unenforceable
    under the circumstances;

    (e)     whether Saturn has violated the CFDPA;

{1297506;}

-11-

(f)    whether Saturn has a duty to disclose the defect; and

(g)    whether Class members are entitled to recover damages
and, if so, the appropriate amount thereof.

38.    **Typicality**: The claims and defenses of Anderson, as the representative Plaintiff,
are typical of the claims and defenses of the Class, because Plaintiff and the Class members all
purchased the Vehicles. Plaintiff's claims arise from the same course of conduct that gives rise
to the claims of other Class members. The common course of conduct at issue is Saturn's sale,
marketing and servicing of the defective Vehicles and its refusal to repair or replace their
defective timing chain mechanisms and/or engines. Plaintiff, like all Class members, purchased
one of the Vehicles without any disclosure by Defendant regarding the defect at issue.

39.    **Adequacy**: Anderson, as the representative Plaintiff, will fairly and adequately
assert and protect the interests of the Class, as he has no conflicts of interest that might interfere
with the maintenance of this class action and he will vigorously prosecute the claims and protect
the interests of the Class through highly qualified counsel with extensive experience in litigating
class actions.

40.    **Predominance**: Questions of law or fact common to the Class predominate over
any individual issues that may exist. The predominant common issues in this case are the issues
of whether the Vehicles and their defects are the same or similar, and whether Defendant violated
the CFDPA and other applicable laws and legal obligations.

41.    **Superiority**: A class action is superior to all other available methods for the fair
and efficient adjudication of this controversy for a number of significant and compelling reasons.
The Class is not so numerous so as to create manageability problems. There are no unusual legal
or factual issues that would create manageability problems and the claims of the individual Class

{1297506:}

-12-

members are small in relation to the expense of litigation, making a class action the only

procedure in which Class members can, as a practical matter, vindicate their rights and obtain

relief.

## COUNT I
## VIOLATIONS OF CFDPA

42.    Plaintiff hereby incorporates paragraphs 1 through 41 as though fully plead herein.

43.    Despite knowing that the Vehicles are manufactured and sold with timing chain

and oiling mechanisms that are inherently defective, and that the premature failure of these

components will cause significant engine damage, when it markets and sells the Vehicles, Saturn

uniformly represents to customers and the general public that the Vehicles are free from defects

and will perform in the manner and for the purpose that they are intended.

44.    Under all of the circumstances, Saturn's representations and/or omissions

regarding the defective timing chains and oiling mechanisms in the Vehicles were misleading

and deceptive, and Saturn intentionally made these misleading and deceptive representations

and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of

deceiving Plaintiff and other Class members and to increase its sales of the subject Vehicles.

45.    Saturn's conduct was unfair and deceptive and constituted an improper

concealment, suppression or omission of material facts, in violation of the CFDPA.

46.    Saturn violated the CFDPA's prohibition against misrepresenting and omitting

material information during commercial transactions, as well as the CFDPA's prohibition against

unfair business practices.

47.    Saturn's misconduct, including the misrepresentations and/or concealment of the

defective condition of the Vehicles, as described in this Complaint, took place the course of trade

{1297506;}

-13-

10/84/2007  15:18    3123454343                    SDP                              PAGE  16/19

or commerce in Illinois, and arose out of transactions that occurred at one or more of its own

dealerships or distribution outlets in Illinois.

48.    As a direct and proximate result of Saturn's violations of the CFDPA, Plaintiff

and other Class members suffered damages, including, but not limited to, the reduced value of

the Vehicles they purchased, and the cost of repairing or replacing damage caused by reasons of

the defects in the timing chain mechanisms of those Vehicles.

## COUNT II
## BREACH OF WARRANTY

49.    Plaintiff hereby incorporates paragraphs 1 through 41 as though fully plead herein.

50.    Vehicles owned by Plaintiff and Class members came with a written warranty

providing assurances that, at the time were originally sold, they were free of defects in materials

and workmanship, including the types of defects at issue in this case.

51.    By operation of law, Saturn also impliedly warranted that the Vehicles were of

merchantable quality.

52.    Saturn breached its warranties, as set forth above, by supplying the Vehicles to

Plaintiff and other Class members in a defective and unsafe condition, and contrary to the above

warranties.

53.    Saturn has received timely notice of the breaches of warranty alleged herein.

Saturn has received, upon information and belief, thousands of complaints and other notices from

its consumers advising it of the defects in the Vehicles.

54.    Saturn caused the limited remedy of repair or replacement of parts during the first

3 years or 36,000 miles to fail of its essential purpose by unreasonably ignoring and delaying the

{1297506:}

repair or replacement of known defects in its Vehicles, such that it had the effect of impairing the usefulness of the product for a substantial length of time.

55.    Saturn has failed to pay for and provide to Plaintiff or the Class, as a warranty replacement, with the newly designed timing chains and oiling mechanisms, which, upon information and belief, conform to the qualities and characteristics that it warranted to be possessed by the Vehicles.

56.    Applying any warranty limitation to avoid the need to repair the particular defect at issue in the case would be unconscionable in that, *inter alia*, the Vehicles were sold with an inherent defect that was already present and known to Saturn before the sales took place.  At the time the Vehicles were sold, Saturn knew, or was reckless in not knowing, about the defect at issue, which could not have been discovered by Plaintiff or other Class members at the time of purchase, and purchasers lacked any meaningful choice with respect to the warranty terms.

57.    As a result of Saturn's breaches of warranty, as alleged herein, Plaintiff and the other Class members have suffered actual damages in amounts yet to be determined.

## COUNT III
## UNJUST ENRICHMENT- In the Alternative

58.    Plaintiff hereby incorporates paragraphs 1 through 41 as though finally plead herein.

59.    In the alternative, Saturn has been unjustly enriched by the purchases of the Vehicles, and the repair and replacement parts purchased because of the above-described defect in the timing chain mechanisms, by Plaintiff and other Class members.

60.    Plaintiff and the other Class members unknowingly conferred a benefit on Saturn of which Saturn had knowledge, since Saturn was aware of the defective nature of the Vehicles

{1297306:}

and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff and the other Class members regarding the nature and quality of the Vehicles while profiting from this deception.

61.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Saturn to retain the benefit of these profits that it unfairly obtained from Plaintiff and members of the Class.

62.    Plaintiff and other members of the Class, having been damaged by Saturn's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Saturn to their detriment.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment and other relief against Defendant as follows:

a.    For an order certifying the Class, pursuant to Fed. R. Civ. P. 23(b)(3), appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.    For compensatory damages sustained by Plaintiff and the Class;

c.    For an order declaring that Defendant is obligated to repair and/or replace the defective timing chains and oiling mechanisms in the Vehicles of Plaintiff and the Class, and requiring it to do so, without regard for any purported warranty limitations, which are unconscionable and otherwise unenforceable under the circumstances;

d.    For payment of costs of suit herein incurred;

e.    For both pre- and post-judgment interest on any amounts awarded;

{1297506:}

f.    For punitive damages to the extent that Defendant's unlawful conduct is

determined to warrant such relief;

g.    For payment of reasonable attorneys' fees and expert fees as may be

allowable under applicable law; and

h.    For such other and further relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated this 26th day of September, 2007.

McDONALD HOPKINS, LLC

Richard N. Kessler
640 North La Salle Drive, Suite 590
Chicago, Illinois 60610-3731
Telephone:    (312) 280-0111

Douglas P. Dehler
SHEPHERD FINKELMAN MILLER
  & SHAH, LLC
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone:    (414) 226-9900
ddehler@sfmslaw.com

James E. Miller
Patrick A. Klingman
Karen M. Leser
SHEPHERD FINKELMAN MILLER
  & SHAH, LLC
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com
**Attorneys for Plaintiff
and the Proposed Class**

{1297506:}

-17-



**FILED**

NOV - 8 2007
NOV 2 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*AE*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM P. ANDERSON, On Behalf of         :
Himself and all others similarly situated    :

           Plaintiff,

v.

SATURN CORPORATION

           Defendant.

      **07CV6213**
   **JUDGE BUCKLO**
 **MAG. JUDGE COLE**

     :

## NOTICE OF FILING

**TO:**   Richard N. Kessler
       640 N. LaSalle Street, Suite 590
       Chicago, IL 60601

    **PLEASE TAKE NOTICE** that on the **2nd** day of **November, 2007**, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Defendant Saturn Corporation's Notice of Removal, a copy of which is attached hereto and hereby being served upon you.

    **DATED** this **2nd** day of **November, 2007**.

                Respectfully submitted,

                CHITTENDEN, MURDAY & NOVOTNY LLC

                By:
                  One of the Attorneys for Defendant
                 **SATURN CORPORATION**

William A. Chittenden III
Matthew W. Gasaway
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, Illinois 60606
(312) 281-3600
O:\GE101\41058 Anderson\Pleadings\Removal\Noticeoffiling-fedremoval.doc

**PROOF OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the above Notice of Filing and document described thereto was served upon all attorneys of record by enclosing a true and correct copy thereof in a postage pre-paid envelope, with all attorneys properly addressed thereto, and depositing same in the U.S. mail box located at 303 West Madison Street, Chicago, Illinois, before the hour of 5:00 p.m., this **2nd** day of **November, 2007.**

Matthew W. Gasaway