IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM P. ANDERSON, On Behalf of Himself and all others similarly situated : : : Plaintiff, : : v. : : SATURN CORPORATION : : Defendant. | CASE NO: 07 C 6213 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**

Saturn Corporation ("Saturn") submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiff William P. Anderson's ("Anderson") claims in his Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6):

**I. INTRODUCTION**

**A.    THE VEHICLES.**

Anderson alleges all Saturn vehicles equipped with L-61 engines, including 2000-2003 model year L-Series, 2002-2003 model-year VUES, and 2003 model-year IONs (the "Vehicles") are defective. (Complaint, ¶ 2.)

**B.    THE ALLEGED DEFECTS.**

According to Anderson, the Vehicles' engines were equipped with a metal timing chain "intended to last the life of the engines." (Complaint ¶ 1.) He alleges the metal timing chains were "inherently defective," causing them to "break suddenly" resulting in engine failure. (Complaint ¶ 3.) Anderson claims Saturn knew and was aware that the timing chains in the Vehicles "were substantially likely to fail and break during ordinary use, long before they

reached the end of their normal useful life." (Complaint ¶ 4.) He alleges Saturn also knew that if the timing chains failed, "the result frequently would be extensive damage to the engine, such that the entire engine would need to be replaced in many cases." (Complaint ¶ 4.) He claims Saturn began investigating the alleged timing chain defect no later than August 2001 and discovered the failures were caused by an insufficient supply of oil to the timing chain mechanism. (Complaint ¶ 5.)

**C.    THE CLAIMS.**

Anderson complains that pursuant to a Technical Service Bulletin ("TSB") issued in June 2003, Saturn advised its dealers that redesigned timing chains and oil nozzles were available for installation in the Vehicles, but that Saturn failed to notify Vehicle owners of the TSB or the alleged defects in the timing chain and oil nozzles. (Complaint ¶ 6.) He claims that despite knowing an unacceptable number of the timing chains would fail, Saturn has "sat silently" while thousands of consumers purchased the allegedly defective Vehicles. (Complaint ¶ 7.) Anderson also alleges Saturn "routinely and misleadingly" attempted "to persuade customers that they (not Saturn) are responsible for the failure of the timing chains because they allegedly did not change the oil with sufficient frequency, all the while knowing that the real problem rests with the original timing chains and oil nozzles that Saturn installed in the Vehicles." (Complaint ¶ 6.) He alleges he and members of the putative class have been damaged because they (1) overpaid for the allegedly defective Vehicles and/or (2) were forced to pay for repairs to the timing chains, oil nozzles, and related parts for which Saturn was responsible. (Complaint ¶ 8-9.)

On behalf of himself and all persons in Illinois who purchased the Vehicles, not for resale, from Saturn or its authorized dealers, Anderson asserts claims for (1) violations of the

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), (2) breach of warranty, and (3) unjust enrichment, in the alternative. (Complaint ¶ 35, 42-48, 49-57, 58-62.)

**D.     ANDERSON.**

Anderson is an Illinois resident, who purchased a new 2002 model-year Saturn on October 12, 2001. (Complaint ¶ 13, 20.) After six years and 65,000 miles, Anderson alleges his vehicle stopped running properly on June 17, 2007 because the timing chain broke. (Complaint ¶ 21-23.) He alleges he contacted Saturn at that time to ask it to pay for the repairs, but Saturn refused. (Complaint ¶ 23.) Anderson claims he paid approximately $3,700 (excluding towing and loss of use) to repair his vehicle. (Complaint ¶ 22.)

## II. ARGUMENT AND AUTHORITIES

**A.     MOTION TO DISMISS STANDARD.**

Although a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, "a plaintiff s obligation to provide the 'grounds' of his 'entitlement to relief ' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007), E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773 (7th Cir. 2007).

The Court must accept all of the complaint's material factual allegations as true, but those allegations "must be enough to raise the right to relief above the speculative level." Bell Atlantic Corp. at 1965 (citing 5C. Wright & Miller, Federal Practice & Procedure § 1216, pp. 235-36 (3d ed. 2004) (pleadings "must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")). Moreover, the Court need not "blindly accept the legal conclusions drawn by the pleader from the facts." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Gil v. Medical Director of Metropolitan

3

Correctional Center, 1997 WL 112818, (N.D.Ill. March 10, 1997); Eret v. Continental Holding, Inc., 838 F.Supp. 358, (N.D.Ill. 1993).  Dismissal is warranted when the allegations show on the face of the complaint that there is an insuperable bar to relief, such as lack of an element necessary to sustain a claim, an affirmative defense, or other bar.  American Dairy Queen Corporation v. Augustyn, 278 F.Supp. 717, 721 (N.D.Ill.1967).  Anderson's claims for breach of warranty and unjust enrichment should be dismissed under this standard as set forth below.

**B.    ANDERSON CANNOT RECOVER FOR BREACH OF WARRANTY.**

It is undisputed Anderson's vehicle was subject to Saturn's limited written warranty,[1] which provides:

> Saturn Corporation will provide for repairs to the vehicle during the WARRANTY PERIOD in accordance with the following terms, conditions, and limitations
>
> * * *
>
> This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the WARRANTY PERIOD.
>
> * * *
>
> The WARRANTY PERIOD for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the COVERAGE period.
>
> * * *
>
> The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first.

Anderson does not dispute the existence of this written warranty to repair any defect in his vehicle related to materials or workmanship occurring during the 3 year/36,000 mile warranty period.  (Complaint ¶ 50.)  Although the Complaint is not entirely clear whether Anderson is

---

[1] Courts may consider other sources outside of the complaint in evaluating a Rule 12(b)(6) motion, including documents incorporated by reference into the complaint and matters of which a court may take judicial notice. Tellabs. Inc. v. Makor Issues & Rights. Ltd., 127 S.Ct. 2499, 2510 (2007) (citing 5B Wright & Miller § 1357 3d ed. 2004 and Supp. 2007), Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661-2 (7th Cir. 2002). The Court should take judicial notice of the fact Anderson's vehicle was covered by and subject to the standard 3 year/36,000 limited new vehicle warranty.  Moreover, the Complaint itself references the written warranty and the Court should therefore have the benefit of considering the full warranty language.  (See Complaint ¶ 50.)  A true and correct copy of the warranty booklet covering 2002 model-year Saturn vehicles is attached as Exhibit A.  Anderson's vehicle was subject to the warranty set forth in this booklet at page 7.

4

asserting a claim for breach of this written warranty or some other warranty[2] in addition to his implied warranty claim, (See Complaint ¶ 49-57), no matter how pled, Anderson's claims for breach of warranty should be dismissed.

### 1. Anderson's Claim for Breach of the Written Warranty Fails.

To state a claim for breach of the written warranty, Anderson must allege that (1) he sought repairs to the timing chain within the 3 year/36 month warranty period and (2) Saturn failed to repair the timing chain in a reasonable time and manner pursuant to the terms of the warranty. See Evitts v. DaimlerChrysler Motors Corp., 834 N.E.2d 942, 950 (Ill. App. 2005) (dismissing claim for breach of written repair warranty where plaintiff first sought repair of allegedly defective part after expiration written warranty). Anderson cannot meet that burden here because his timing chain did not allegedly fail until years after the expiration of the limited warranty period. Indeed, Illinois law uniformly holds that warranties of limited duration only cover defects that become apparent or occur during the warranty period. Id. at 950 (citing Tokar v. Crestwood Imports, Inc., 177 Ill.App.3d 422, 431-32 (1988)). "To allow a customer to seek damages for breach of an express warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract." Id. (citing Walsh v. Ford Motor Co., 588 F.Supp. 1513, 1536 (D.D.C. 1984)). In other words, Anderson may not

---

[2] Notably, Anderson alleges that Saturn represented to him that his vehicle was free from material defects and were of merchantable quality and workmanship. (See Complaint ¶ 25.) Anderson has not alleged when these statements were supposedly made or how they were communicated to him, which are deficiencies addressed more fully below. Nevertheless, to the extent Anderson claims the written warranty is the source of these supposed representations, courts have routinely rejected the argument that similar repair and replace language warrants or represents anything about vehicles' functioning or performance. See, e.g., Cosman v. Ford Motor Co., 674 N.E.2d 61, 66 (Ill. App. 1996) (promise that manufacturer will repair or replace defective parts is representation that manufacturer will behave in a certain way, not a warranty or representation that vehicle will behave in certain way). Anderson also has not alleged that he relied on these statements or that the statements became the basis of the bargain. Accordingly, he has not stated a claim for breach of any express warranty based on these statements. See Mydlach v. DaimlerChrysler Corp., --- N.E.2d ---, 2007 WL 2729268 at *7 (Ill. Sept. 20, 2007). Even if the statements were express warranties, moreover, Anderson's claims for breach of those warranties would, in any event, be barred by limitations as set forth below.

5

recover under a breach of warranty theory for allegedly latent defects that did not manifest until after the warranty period expired. Tokar, 532 N.E.2d at 388-89. This is true whether based on an express or implied warranty theory.[3] Sampler v. City Chevrolet Buick Goe, Inc., 10 F. Supp.2d 934, 941 (N.D. Ill. 1998) ("A buyer may not bring an action for breach of an express or an implied warranty based on defects which become evident after the expiration of those warranties.").

Anderson alleges he purchased his vehicle in October 2001. (Complaint ¶ 13, 20.) The limited written warranty therefore expired by its terms, at the latest, by October 2004. He affirmatively alleges that the problem he had with the timing chain occurred well after October 2004; in fact, he claims the alleged defect did not manifest or cause any problem in his vehicle until nearly four years later in June 2007. (Complaint ¶ 21.) Anderson's claim for breach of the written repair or replace warranty therefore fails. Tokar, 532 N.E.2d at 387; see also Karpowicz v. General Motors Corp., Cause No. 97 C 1390, 1998 WL 142417 *4 (N.D. Ill. Mar. 26, 1998) (refusing to apply warranty to latent condition that began during warranty period but did not manifest until after warranty period expired). His claim for breach of the written limited warranty should therefore be dismissed.

### 2. Anderson's Claims for Breach of Express and Implied Warranties are Barred By Limitations.

A four-year statute of limitations governs actions for breach of warranty under Illinois law. 810 ILCS 5/2-725. Implied warranty actions against manufacturers accrue at the time of delivery of the vehicles to the original purchaser. 810 ILCS 5/2-725(2); see also Mydlach v.

---

[3] This section deals with the written new vehicle warranty provided with Anderson's vehicle. However, that warranty also limited the duration of any implied warranties to the same 3 year/36 month warranty period. (See Ex. A at p.10.) Accordingly, Anderson's failure to plead the occurrence of the alleged tire chain defect within the warranty period also bars his implied warranty claims for the same reason. See Sampler, 10 F. Supp.2d at 940-41. This ground for dismissal of any implied warranty claim is independent of the additional reasons Anderson cannot recover under an implied warranty theory discussed below.

6

DaimlerChrysler Corp., 846 N.E.2d 126, 140 (Ill. App. 2005), rev'd on other grounds, --- N.E.2d ---, 2007 WL 2729268 (Ill. Sept. 20, 2007). Claims for breach of any express warranties relating to the quality of the goods also accrue upon delivery. Mydlach v. DaimlerChrysler Corp., --- N.E.2d ---, 2007 WL 2729268 at *8 (Ill. Sept. 20, 2007). Here, the Complaint alleges Anderson purchased his new 2002 model-year vehicle on October 12, 2001 and took delivery shortly thereafter. (Complaint ¶ 20.) His implied and express warranty claims therefore accrued in or about October 2001. Limitations on those claims ran by November 2005 at the latest. Anderson did not file this action until almost two years later on September 27, 2007. His breach of express and implied warranty claims are therefore time-barred and should be dismissed.

### 3. Anderson, a Non-Privity Buyer, Cannot Maintain a Breach of Implied Warranty Action against Saturn.

Under Illinois law, a purchaser may not maintain a claim against a remote manufacturer to recover solely economic losses under a breach of implied warranty theory. Rothe v. Maloney Cadillac, Inc., 518 N.E.2d 1028, 1029-30 (Ill. 1988) (holding that with respect to purely economic loss, the U.C.C. implied warranties give a buyer of goods a potential cause of action only against his immediate seller). See also Merkertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill.App.3d 828, 832; 807 N.E.2d 1165 (2004) (plaintiff seeking economic losses for breach of implied warranty must be in vertical privity with seller). Anderson does not allege he purchased his vehicle from Saturn. He also appears to seek only economic damages. (Complaint ¶ 12). Although his damage claims are vague, the Complaint's purported class allegations explicitly exclude "any claims that [Anderson] or any [putative] Class members may have for personal injuries or damages arising from or related to personal injuries …." (Complaint ¶ 35.) Accordingly, Anderson's implied warranty claim is solely for economic loss

7

and he has not stated a claim against Saturn for lack of privity. For this reason as well, the breach of implied warranty claim should be dismissed.

### 4. **Anderson Has Not Properly Plead His Vehicle is Unmerchantable.**

To state a claim for breach of the implied warranty of merchantability, Anderson must allege facts showing his Saturn was not "fit for the ordinary purposes for which such goods are used." See 810 ILCS 5/2-314(2)(c). Courts have held that the "ordinary purpose" of an automobile is to provide transportation; an automobile that provides safe, reliable transportation is generally considered "merchantable." Carlson v. Gen. Motors Corp., 883 F.2d 287, 297-98 (4th Cir. 1989); In re Air Bags Prods. Liab. Lit., 7 F.Supp.2d 792, 803 (E.D.La. 1998). The implied warranty of merchantability does not "impose a general requirement that the goods precisely fulfill the expectations of the buyer. Instead, it provides for the minimum level of quality." Skelton v. Gen. Motors Corp., 500 F. Supp. 1181, 1191 (N. Dist. Ill. 1980), reversed on other grounds, 660 F.2d 311 (7th Cir. 1981). In addition, the Complaint must show Anderson's vehicle was unmerchantable at the time of original sale or delivery. Alvarez v. Am. Isuzu Motors, 321 Ill.App.3d 696, 702-03, 749 N.E.2d 16 (2001). The Complaint does not satisfy these requirements here.

Anderson purchased his 2002 model-year vehicle new in October 2001. (Complaint at ¶ 13, 20.) Six years later after having been driven approximately 65,000 miles, in June 2007, he claims his vehicle "suddenly stopped running properly" because of the alleged timing chain defect. (Complaint ¶ 13, 20, 23.) In other words, "with the exception of a single [failure six] years after the original manufacture, [Anderson's] complaint makes out no allegations that [his vehicle] was not fit for the purposes for which it was intended, i.e., to provide safe and reliable transportation."; Bussian v. DaimlerChrysler Corp., 411 F.Supp.2d 614, 624 (M.D. N.C. 2006).

8

Anderson's allegations are insufficient as a matter of law to state a claim for breach of the warranty of merchantability.  Bussian, 411 F.Supp.2d at 624; see also Priebe v. Autobarn Ltd., 240 F.3d 584, 588 (7th Cir. 2001) (despite allegation that plaintiff "lost faith" in vehicle, fact he continued to drive it and had driven it over 30,000 miles negated merchantability claim); Lee v. Gen. Motors Corp., 950 F.Supp. 170, 174 (S.D. Miss. 1996) (merchantability claims failed when vehicles had been driven for 5 years and 90,000 miles without manifesting their alleged defects); Taterka v. Ford Motor Co., 271 N.W.2d at 655 (Wis. 1978) (same -- 33 months and 75,000 miles); Ford Motor Co. v. Fairley, 398 So.2d 216, 219 (Miss. 1981) (same – two years and 26,649 miles).

Taken at face value, Anderson has alleged only that his vehicle "suddenly stopped running properly" six years after its manufacture in 2001 after being driven 65,000 miles. Anderson does not allege the vehicle otherwise did not provide safe and reliable transportation for the six years he has owed it or the 65,000 miles he has driven it.  His allegations do not support any claim his vehicle was unmerchantable at the time it was originally sold or was unfit for the purpose of transportation.  Indeed, the fact his vehicle was serviceable for six years and 65,000 miles prior to manifestation of the alleged timing chain defect negates the merchantability claim as a matter of law.  The implied warranty claim should be dismissed for this reason as well.

**B.     ANDERSON'S UNJUST ENRICHMENT CLAIM FAILS**.

    **1.     Anderson Cannot Claim Unjust Enrichment when
     an Express Contract Governs the Parties' Dispute.**

Anderson's unjust enrichment claim is not cognizable under Illinois law. Unjust enrichment theories are based on quasi-contract, and Illinois law does not allow recovery on a quasi-contractual theory when a valid, express contract governs the subject matter of the parties'

dispute. First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir. 1985), Lilly v. Ford Motor Co., 2002 WL 84603, (N.D.Ill. Jan 22, 2002), People ex. rel. Hartington v. E & E Hauling, Inc., 607 N.E.2d 165, 180 (Ill. App. 1992) ("Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") Anderson has apparently also asserted a claim under the written warranty provided with his vehicle. (Complaint ¶ 50.)[4] That warranty governs the resolution of this dispute. His attempt to assert a quasi-contractual theory of unjust enrichment to obtain repairs outside the warranty period (at Saturn's expense) despite the existence of a written agreement governing Saturn's repair obligations to consumers is clearly contrary to Illinois law. Anderson's unjust enrichment claim should therefore be dismissed for failure to state a claim.

### 2. The Complaint Does Not Allege What Benefits Defendants Unjustly Retained.

To recover on a theory of unjust enrichment, Anderson must plead and prove: (1) Saturn unjustly retained a benefit to his detriment and (2) Saturn's retention of that benefit violates fundamental principles of justice, equity, and good conscience. Fireman's Ann. & Benefit Fund v. Municipal Employees', Officers', & Officials' Ann. & Benefit Fund, 219 Ill.App.3d 707, 712, 579 N.E.2d 1003 (Ill. App. 1991). Despite a recitation of these elements in the Complaint, Anderson does not allege facts showing Saturn received or retained any benefit in violation of fundamental principles of justice, equity, or good conscience.

---

[4] As set forth above, Anderson cannot recover under that written warranty. Anderson acknowledges, however, that the limited written warranty he received with his vehicle governs Saturn's obligations to purchasers with respect to any alleged vehicle defects. (Complaint ¶ 50.) Anderson should not be permitted to enlarge Saturn's obligations under the guise of an unjust enrichment claim, even if pled in the alternative. "When parties have an actual contract covering a subject, a court cannot --even under the guise of equity jurisprudence-- substitute the court's own concept of fairness regarding that subject in the place of the parties' own contract." Hedging Concepts. Inc. v. First Alliance Mortgage. Co., 41 Cal. App. 4tb 1410, 1420 (1996).

Anderson alleges that Saturn knew of the allegedly defective timing chain as early as August 2001 yet failed to disclose the alleged problem. (Complaint ¶ 7.)  Anderson generically alleges Saturn has profited, directly or indirectly, by concealing the nature of the alleged defect because (1) he and putative class members paid more for the Vehicles than they were worth and (2) Vehicle owners have been forced to pay for repairs to correct the alleged defects. (Complaint at ¶ 8-9.)  Finally, he claims "it would inequitable, unconscionable, and unjust" to permit Saturn to retain the benefits of profits it received from him and putative class members.  (Complaint ¶ 61.)

The facts Anderson alleges do not support these conclusory claims.  First, Anderson has not alleged that he purchased his vehicle from Saturn.  His purchase (or overpayment for his vehicle) thus could not confer any benefit on it.  Second, even if Anderson spent money repairing his vehicle, no benefit was conferred on Saturn, as it does not engage in that line of business.  Third, the only "benefit" to Saturn raised by Anderson's allegations is the potential savings of the cost to repair his allegedly defective vehicle.  (Complaint ¶ 9.)  The potential "savings" benefit, however, is insufficient to support an unjust enrichment claim because Saturn only obligated itself to repair defects in materials and workmanship in Anderson's vehicle for 3 years or 36,000 miles, whichever came first; and that warranty period expired years ago.  See <u>Abraham v. Volkswagon of America, Inc.</u>, 795 F.2d 238, 250 (2d Cir. 1986) (the general rule is that the written warranty "does not cover repairs made after applicable time or mileage periods have expired.").  Accordingly, Saturn's retention of any purported "savings" in repair cost for Anderson's vehicle is not a benefit; nor is any benefit Saturn retained in that regard unjust.

11

No doubt Anderson will argue Saturn's reliance on the limitations in the written limited warranty is inequitable because of its knowledge of the alleged defect in the vehicles. The argument misses the mark:

> [V]irtually all product failures are discovered in automobiles after the expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of them failing within a particular period of time. Such knowledge is easily demonstrated by the fact manufacturers must predict rates of failure for particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranties.

Id. Saturn's reliance on the written warranty to limit its liability for part failures occurring, in this case, over six years after vehicle manufacture is neither unjust nor inequitable. Other than saying so, Anderson has not alleged any facts showing that (1) he conferred any benefit on Saturn or (2) its retention of any supposed benefit is unjust. Anderson's unjust enrichment claims should be dismissed for these reasons as well.

**C.   ANDERSON'S MISREPRESENTATION CLAIMS UNDER THE ICFA SHOULD ALSO BE DISMISSED UNDER RULE 9(B).**

Federal Rule of Civil Procedure 9(b), which requires that averments of alleged fraud be pled with particularity, applies to state law causes of action. Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 470 (7th Cir. 1999), Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (stating "it is established law" that Rule 9(b) requires the circumstances of state-law fraud claims to be stated with particularity) (citations omitted). In particular, claims under the ICFA must be stated with particularity under Rule 9(b). Azimi v. Ford Motor Co., 977 F.Supp.847, 852-53 (N.D. Ill. 1996). The Complaint's ICFA allegations fail to meet Rule 9(b)'s standard.

In all averments of fraud, the circumstances constituting fraud must be pled with particularity. FED. R. CIV. P. 9(b). Under the ICFA, the Complaint must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated" in the case of positive assertions. Gallagher Corp. v. Mass. Mut. Life Ins. Co., 940 F.Supp. 176, 180 (N.D. Ill. 1996) (quotation omitted). In the case of omissions, Rule 9(b) requires details about how the defendant knew about the facts not disclosed as well as what the defendant knew at the time of the sale to the plaintiff. See White v. DaimlerChrysler Corp., 856 N.E.2d 542, 550 (Ill.1st Dist. 2006).

Here, the Complaint is rife with misrepresentation allegations that offer none of the factual details required by Rule 9(b). For example, Anderson alleges in conclusory fashion that Saturn "misrepresented … material facts concerning a serious design defect" (Complaint ¶ 3), "misleadingly attempted (and continues to routinely attempt) to persuade consumers that they (not Saturn) are responsible for the failure of the timing chains because they allegedly did not change the oil with sufficient frequency," (Complaint ¶ 6), "misrepresent[ed] its knowledge regarding the defect at issue and misrepresent[ed] the cause of the problems to consumers," (Complaint ¶ 9), and "represented and warranted to [him and putative class members] that the Vehicles were reliable, that they were free from material defects, and that they were of merchantable quality and workmanship" (Complaint ¶ 25). Nowhere does the Complaint allege the time the representations were allegedly made, the place they were made, or the method by which Saturn purportedly communicated the representations to him (or putative class members). Elsewhere Anderson complains he "was told, at the time he purchased his vehicle," that (1) "it had a metal timing chain, which (unlike a timing belt) never needed to be replaced" and (2) "the

13

timing chain was intended to last the life of the engine." (Complaint ¶ 20, 23)  Anderson has not identified who made these statements or how they were communicated to him.

In short, the Complaint's misrepresentation averments are simply not specific enough to satisfy the requirements of Rule 9(b).  See, e.g., Accuimage Diagnostics Corp. v. Tereracon, 260 F.Supp.2d 941, 959 (N.D. Cal. 2003) (holding that discovery is not the appropriate time to ascertain whether "fundamental facts" exist necessary to state a claim).  Accordingly, Anderson's claims under the ICFA should be dismissed.

## IV. RELIEF REQUESTED

For the foregoing reasons, Saturn respectfully requests that the Court dismiss the Complaint in its entirety, and for such other and further relief as the Court deems just.

                    Respectfully submitted,

                    CHITTENDEN, MURDAY & NOVOTNY LLC

By:    /s Matthew W. Gasaway

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2007 I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system.  I also hereby certify that I served a copy of the above and foregoing to all non CM/ECF participants by enclosing a true and correct copy thereof in a properly addressed, postage prepaid envelope and depositing same in the U.S. Mail chute located at 303 W. Madison Street, Chicago, Illinois, 60606 on or before the hour of 5:00 p.m. on November 26, 2007.

/s Matthew W. Gasaway

William A. Chittenden III
Matthew W. Gasaway
Chittenden, Murday & Novotny LLC
303 West Madison Street, Suite 1400
Chicago, Illinois  60606
(312) 281-3600